**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LUDVIN EMERSON RODAS-BARIAS ) | |
| ) | Case No. 26-12971 |
| Petitioner, ) | |
| ) | **PETITION FOR WRIT OF** |
| v. ) | **HABEAS CORPUS** |
| ) | |
| ANTONE MONIZ, Superintendent, Plymouth ) | |
| County Correctional Facility ) | |
| PATRICIA HYDE, Field Office Director, ) | |
| MICHAEL KROL, HSI New England Special ) | |
| Agent in Charge ) | |
| DAVID VENTURELLA, Acting Director U.S. ) | |
| Immigrations and Customs Enforcement, ) | |
| MARKWAYNE MULLIN, U.S. Secretary ) | |
| of Homeland Security, ) | |
| and TODD BLANCHE, U.S. Attorney General ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

1. Petitioner Ludvin Emerson Rodas-Barias ("Petitioner" or "Mr. Rodas-Barias") is a nineteen-year-old national and citizen of Guatemala, born on January 24, 2007. He is presently detained in civil immigration custody at Plymouth County Correctional Facility ("PCCF") within this District. He brings this Petition under 28 U.S.C. § 2241 to challenge his unlawful immigration detention and to obtain immediate release or, at minimum, a prompt individualized custody redetermination hearing before an Immigration Judge under 8 U.S.C. § 1226(a), with the procedural protections required by governing law.

2. Petitioner's A-Number is 220-061-013. He is the son of Yessenia Maribel BARIAS-JIMENEZ, A-Number: 216-170-017, who was granted asylum by the Boston Immigration Court on August 19, 2022. Prior to his detention, Petitioner resided in Massachusetts and was living and working in the community. Upon information and belief, he

has no criminal record and no criminal convictions that would trigger mandatory detention under 8 U.S.C. § 1226(c). Petitioner of this writ petition is the beneficiary of an I-730 petition filed by his asylee mother Yessenia on August 9, 2024. *Tab A*.

3. Upon information and belief, Petitioner entered the United States as a minor in or about April 2021. He was placed in removal proceedings before the Boston Immigration Court, with a docket date of July 1, 2021. His case remains pending and no final order of removal has been entered.

4. Petitioner has substantial pending immigration relief. On August 9, 2024, USCIS received and fee-waived Form I-730, Refugee/Asylee Relative Petition, Receipt No. SRC2426150186, filed on Petitioner's behalf. That petition remains pending before USCIS. *Tab A*.

5. On August 27, 2024, the Boston Immigration Court administratively closed Petitioner's removal proceedings to await a decision by USCIS on his pending I-730 petition. The Immigration Judge expressly noted that the case remained under the jurisdiction and docket control of the Immigration Court and that either party could seek recalendaring by written motion.

6. DHS later moved to recalendar Petitioner's proceedings. On June 2, 2025, the Boston Immigration Court granted DHS's motion to recalendar. The matter was later placed on the Status Docket. The Immigration Court has ordered that Petitioner provide a status update regarding the pending application on or before October 23, 2026, and the court has scheduled a status/master hearing for November 23, 2026, at 8:30 a.m. at the Boston Immigration Court. *Tab A*.

7.   Petitioner is therefore in active, ongoing removal proceedings. He is not subject to a final order of removal and is not detained under 8 U.S.C. § 1231.

8.   On or about Saturday, June 27, 2026, Petitioner was working in Maine when ICE arrested him. He was not apprehended at a border or port of entry. He was not attempting to enter the United States. He was not continuously detained after arrival. He was arrested in the interior after years of residence in the United States and while maintaining a pending immigration case and pending I-730 petition.

9.   Petitioner is now detained at PCCF in Massachusetts. His detention has separated him from his mother and family, disrupted his ability to work, and impairs his ability to assist counsel in pursuing his pending I-730 and removal proceedings.

10. Petitioner has no apparent criminal record. Upon information and belief, Respondents have not made any individualized determination that Petitioner poses a danger to the community or a flight risk. Instead, Respondents appear to be detaining him under an unlawful no-bond theory that treats noncitizens who entered without inspection and were later arrested in the interior as categorically subject to mandatory detention under 8 U.S.C. § 1225(b).

11. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c). See *Demore v. Kim*, 538 U.S. 510, 513-14 (2003). He has no convictions that trigger mandatory detention.

12. Petitioner is not subject to post-final-order detention under 8 U.S.C. § 1231 because he has no final removal order.

13. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(1), including because he is not being processed for expedited removal and is already in ongoing removal proceedings before EOIR. *See Make the Road New York v. Noem*, No. 25-190, 2025 WL 2494908, at *23 (D.D.C. Aug. 29, 2025).

14. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). As a person arrested in the interior years after entry, while already present in the United States and while in pending removal proceedings, Petitioner is not presently "seeking admission" at a port of entry. See *Aguiriano Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *8-13 (D. Mass. Aug. 19, 2025).

15. Instead, as a noncitizen arrested inside the United States and detained during pending removal proceedings, Petitioner is detained, if at all, under 8 U.S.C. § 1226(a). See id.; see also *Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, 2025 WL 2809996, at *4-10 (D. Mass. Oct. 3, 2025); *Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, 2025 WL 3033769, at *12-14 (D. Mass. Oct. 30, 2025); *Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, 2025 WL 10406026, at *14-20 (D. Mass. Dec. 19, 2025).

16. Petitioner falls squarely within the certified class in *Guerrero Orellana v. Moniz*, Civil Action No. 25-cv-12664-PBS (D. Mass.). Petitioner was arrested in the interior; he was not apprehended at the border or upon arrival; he is not subject to expedited removal; he has no criminal history triggering 8 U.S.C. § 1226(c); he is not subject to post-final-order detention; and he was never admitted or paroled into the United States. As a member of the *Guerrero Orellana* class, Petitioner is not subject to mandatory detention under § 1225(b)(2)(A) and is instead governed by § 1226(a), with a right to a bond hearing before an Immigration Judge.

17. As a person detained under § 1226(a), Petitioner is entitled, upon request, to a custody redetermination hearing before an Immigration Judge with strong procedural protections. See *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021); *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021); 8 C.F.R. §§ 236.1(d), 1003.19(a)-(f).

18. To the extent Respondents rely on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), to deny Petitioner an individualized bond hearing, that reliance is unlawful. The BIA's interpretation is not entitled to deference after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412-13 (2024), and it cannot override this Court's independent obligation to determine the best reading of the INA.[1]

19. The responsible administrative agency has therefore predetermined that Petitioner will be denied a bond hearing.[2] Thus, in any event, *Matter of Yajure Hurtado* cannot constitutionally or lawfully be applied to deny bond hearings to interior arrestees like Petitioner who have lived in the United States for years, have pending EOIR proceedings, have pending immigration relief, and were not arrested while seeking entry at the border.

20. Petitioner is being irreparably harmed by ongoing civil detention without an individualized hearing. Loss of liberty is a severe and irreparable injury. See *Aguiriano Romero*, 2025 WL 2403827, at \*6-8; *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010); Brito, 22 F.4th at 256.

---

[1] The BIA's reversal and newly revised interpretation of the statute are not entitled to any deference. *See Loper Bright Ent. v. Raimondo*, 603 U.S. 369, 412-13 (2024). Further, the Petitioner is arguably eligible for a bond hearing pursuant to *Lazaro Maldonado Bautista et al v. Ernesto Santacruz Jr et al.*, case no. 5:25-cv-01873-SSS-BFM decided by the United States District Court for the Central District of California on November 20, 2025. The Petitioner is potentially a member of the Bond Eligible Class as set forth in *Maldonado Bautista*'s District Court Order Granting Class Certification for "all noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." The U.S. District Court (Central District, CA) has effectively overturned the BIA's decision in *Matter of Yajure-Hurtado* by holding that "individuals who have not been inspected and authorized by an immigration officer lack the trait to be categorized as 'applicants for admission'". The District Court finds that § 1226(a) is the appropriate governing authority over individuals in the same position as the petitioners in *Maldonado Bautista*.

[2] Moreover, the continued reliance on *Matter of Yajure Hurtado* has been directly undermined by subsequent federal court rulings. In *Lazaro Maldonado Bautista et al. v. Ernesto Santacruz Jr. et al.*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Feb. 18, 2026), the United States District Court for the Central District of California ruled that the federal government is continuing to detain individuals who are eligible to receive bond hearings before an Immigration Judge in violation of the final judgment issued in that case. The court further vacated the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, holding that noncitizens who entered without inspection but were not apprehended at or near the border cannot be categorically treated as "arriving applicants" subject to mandatory detention under 8 U.S.C. §1225(b). Accordingly, individuals like Petitioner, who entered without inspection years ago and were later arrested inside the United States, remain governed by 8 U.S.C. §1226(a) and are entitled to custody redetermination hearings before an Immigration Judge.

21. There is no statutory requirement that Petitioner exhaust administrative remedies before bringing this habeas petition. See *Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *4 (D. Mass. July 7, 2025).

22. Prudential exhaustion should be excused because Petitioner faces ongoing irreparable loss of liberty; the Immigration Court lacks jurisdiction to adjudicate constitutional claims; and further administrative proceedings would be futile to the extent agency actors treat *Matter of Yajure Hurtado* or related no-bond policies as binding. See *Flores-Powell*, 677 F. Supp. 2d at 463; *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74 (1st Cir. 1997).

23. Petitioner therefore need not further exhaust administrative remedies before seeking relief from this Court.

## JURISDICTION AND VENUE

24. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in custody under or by color of the authority of the United States and challenges the legality of that custody.

25. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Immigration and Nationality Act.

26. This Court has authority to grant habeas relief under 28 U.S.C. § 2241, declaratory relief under 28 U.S.C. § 2201, and further appropriate relief under 28 U.S.C. § 1651.

27. Venue is proper in the District of Massachusetts because Petitioner is detained at PCCF within this District. Respondent Antone Moniz, Superintendent of PCCF, is Petitioner's immediate custodian for habeas purposes.

## PARTIES

28. Petitioner Ludvin Emerson RODAS-BARIAS (A 220-061-013) is a national and citizen of Guatemala currently detained in ICE custody at PCCF within the District of Massachusetts.

29. Respondent Antone Moniz is the Superintendent of PCCF and Petitioner's immediate custodian.

30. Respondent Patricia Hyde is the Field Office Director for ICE Enforcement and Removal Operations Boston and is responsible for custody and detention decisions for persons detained within this District.

31. Respondent Michael Krol is the New England Special Agent in Charge for Homeland Security Investigations.

32. Respondent David Venturella is the Acting Director of U.S. Immigration and Customs Enforcement.

33. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security.

34. Respondent Todd Blanche is the Attorney General of the United States.

35. All Respondents are sued in their official capacities.

**FACTUAL BACKGROUND**

36. Petitioner is nineteen years old. He is a young Guatemalan national who has lived in the United States since he was a minor.

37. Petitioner's mother has actively supported him and has retained counsel to assist him in his immigration case, including his pending I-730 and removal proceedings.

38. Petitioner has no apparent criminal record. He was working in Maine when ICE arrested him. His employment history and family support show that he is neither a danger nor a flight risk.

39. Petitioner's removal proceedings have been pending for years. His case was administratively closed in August 2024 specifically to await USCIS adjudication of his pending I-730 petition. *Tab A*.

40. Petitioner's I-730 petition remains a significant pending form of relief. If approved, it may provide Petitioner a lawful pathway as a derivative relative of a refugee/asylee. Detaining Petitioner without bond while that petition remains pending serves no legitimate immigration purpose. *Tab A*.

41. Petitioner has appeared through counsel in immigration proceedings and has maintained contact with his family and counsel. His matter is currently on the Boston Immigration Court's Status Docket, with a status update due October 23, 2026 and a hearing scheduled for November 23, 2026. *Tab A*.

42. Petitioner's detention is particularly unnecessary because he is already represented by counsel, has a known immigration court case, has a pending USCIS petition, and has family support available to assist him in appearing for all future proceedings.

43. Respondents' refusal to provide Petitioner a bond hearing is unlawful because Petitioner is detained, if at all, under § 1226(a), not § 1225(b).

44. Even if Respondents contend that detention is authorized by statute, the Fifth Amendment prohibits detention that is arbitrary, punitive, or excessive in relation to its civil purposes. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

45. Detention here is arbitrary and excessive. Petitioner is nineteen, has no apparent criminal history, has a pending I-730 petition, has active EOIR proceedings, has family support, and was arrested while working in the community.

46. Respondents have not provided Petitioner with a lawful individualized hearing at which the government bears the burden of proving danger or flight risk by clear and convincing

evidence, considers alternatives to detention, and imposes detention only if no less restrictive condition can reasonably assure appearance and community safety.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of 8 U.S.C. 1226(a) and Associated Regulations

47. Petitioner incorporates the preceding paragraphs as though fully set forth herein.

48. Petitioner is detained, if at all, under 8 U.S.C. § 1226(a).

49. Section 1226(a) authorizes discretionary detention during pending removal proceedings and permits release on bond or conditional parole. *See* 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

50. Respondents' treatment of Petitioner as categorically ineligible for a bond hearing violates § 1226(a) and its implementing regulations.

51. Petitioner is entitled to a custody redetermination hearing before an Immigration Judge.

### COUNT TWO
### Violation of Fifth Amendment Procedural Due Process

52. Petitioner incorporates the preceding paragraphs as though fully set forth herein.

53. The Fifth Amendment prohibits the federal government from depriving any person of liberty without due process of law.

54. Civil immigration detention without an individualized hearing violates procedural due process where the government has not established that detention is necessary to serve the legitimate purposes of preventing flight and protecting the community.

55. Under *Hernandez-Lara*, *Doe*, and *Brito*, the Petitioner is entitled to a bond hearing at which the government bears the burden of proving by clear and convincing evidence that he poses a danger or flight risk and at which the Immigration Judge must consider alternatives to detention and ability to pay.

56. Respondents have detained Petitioner without providing such a hearing.

57. Respondents' continued detention of Petitioner violates the Fifth Amendment.

**COUNT THREE**
**Violation of Fifth Amendment Substantive Due Process**

58. Petitioner incorporates the preceding paragraphs as though fully set forth herein.

59. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

60. The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"); *cf. Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

61. Civil immigration detention must bear a reasonable relation to legitimate immigration purposes and may not be punitive, arbitrary, or excessive. See *Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

62. Petitioner is nineteen years old, has no apparent criminal history, has family support, has been working, has a pending I-730 petition, and has ongoing removal proceedings in Boston Immigration Court.

63. Without an individualized hearing, Respondents cannot establish that Petitioner's continued civil detention is reasonably related to preventing flight or protecting the community.

64. Petitioner's continued detention is arbitrary, excessive, and violates substantive due process.

### COUNT FOUR
### Misclassification of Detention Authority

65. Petitioner incorporates the preceding paragraphs as though fully set forth herein.

66. To the extent Respondents classify Petitioner as detained under § 1225(b), that classification is contrary to law.

67. Petitioner was not arrested at the border or while attempting to enter the United States. He was arrested in the interior after years in the United States, while working, while represented by counsel, while in pending EOIR proceedings, and while the beneficiary of a pending I-730 petition.

68. Recent decisions in this District reject attempts to use § 1225(b)(2) to deny bond hearings to noncitizens arrested in the interior during pending removal proceedings. See *Aguiriano Romero*, 2025 WL 2403827, at *8-13; *Guerrero Orellana*, 2025 WL 2809996, at *4-10; *Guerrero Orellana*, 2025 WL 3033769, at *12-14; *Guerrero Orellana*, 2025 WL 10406026, at *14-20.

69. The BIA's contrary interpretation in *Matter of Yajure Hurtado* is not entitled to deference under *Loper Bright* and cannot override this Court's independent duty to determine the best reading of the statute.

70. Any continued refusal to provide Petitioner a bond hearing based on a § 1225(b) or no-bond classification is unlawful and warrants declaratory and habeas relief.

**COUNT FIVE**
**Request for Transfer Injunction and Preservation of Habeas Jurisdiction**

71. Petitioner incorporates the preceding paragraphs as though fully set forth herein.

72. Petitioner is currently detained at PCCF in this District and faces possible transfer outside the District of Massachusetts.

73. Transfer would substantially impair Petitioner's ability to consult with counsel, prepare his pending I-730 and removal proceedings, gather evidence, communicate with family, and obtain meaningful judicial review of his detention.

74. Transfer would also risk interfering with this Court's ability to exercise habeas jurisdiction and provide effective relief. See *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004).

75. Petitioner therefore requests an order prohibiting Respondents from transferring him outside the District of Massachusetts during the pendency of this action absent prior notice to the Court and counsel and leave of Court.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) **Order that Petitioner shall not be transferred outside the District of Massachusetts**;

(3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(4) Declare that Petitioner's detention is unlawful especially without an individualized bond hearing;

(5) Declare that Petitioner is detained, if at all, under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b);.

(6) **Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately, or, in the alternative, provide Petitioner with a bond hearing and order Petitioner's release on conditions the Court deems just and proper, especially since the Petitioner falls within the *Guerrero Orellana* certified class**.

(7) Grant any further relief this Court deems just and proper.

### EMERGENCY REQUEST TO PREVENT TRANSFER

Petitioner has been detained at the Plymouth County Correctional Facility and faces imminent transfer outside the District of Massachusetts. Transfer would deprive this Court of jurisdiction and irreparably harm Petitioner's ability to seek judicial relief and consult counsel. See *Aguiriano v. Hyde*, No. 25-11631 (D. Mass. Aug. 19, 2025); *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455 (D. Mass. 2010). Accordingly, Petitioner requests an emergency stay of transfer pending resolution of this Petition.

Respectfully submitted,

*Johanna M. Herrero*

*Counsel for Petitioner*

Dated: June 29, 2026

## CERTIFICATE OF SERVICE

I certify that on June 29, 2026, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

*Johanna M. Herrero*

Dated: June 29, 2026                               *Counsel for Petitioner*